John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Marshall A. Camp, State Bar No. 231389
mcamp@hueston.com
Joseph A. Reiter, State Bar No. 294976
jreiter@hueston.com
Haoxiaohan Cai, State Bar No. 331131
hcai@hueston.com
Joseph Crusham, State Bar No. 324764
jcrusham@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:    (213) 788-4340
Facsimile:    (888) 775-0898

*Attorneys for Defendants Kaiser Foundation Hospitals,
Kaiser Foundation Health Plan, Inc., The Permanente
Medical Group, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED KP FREEDOM ALLIANCE, an unincorporated association; LE-LAN JORGENSEN, an individual; LAURA YVANOVICH, an individual; ROBIN DRUMMOND, an individual, TRACEY FORD, an individual; NATALIE OGLE, an individual; and NATHAN LEAVITT, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> KAISER PERMANENTE (Kaiser Foundation Hospitals, Kaiser Foundation Health Plan, Inc., The Permanente Medical Group, Inc.) and DOES I-X, <br><br> Defendants. | Case No. 3:21-cv-07894-VC <br><br> **KAISER PERMANENTE'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DKT. 27]** <br><br><br> Judge: Hon. Vince Chhabria <br> Courtroom: 4 <br> Hearing Date: December 9, 2021 <br> Hearing Time: 10:00 a.m. |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 3

     A.      COVID-19 Continues to Threaten Public Health ................................... 3

     B.      Vaccines Prevent COVID-19 Infections and Transmissions ................... 4

     C.      The COVID-19 Vaccines are Safe ........................................................... 5

     D.      Kaiser Permanente Implemented its Vaccine Policy to Protect the Health of Employees, Members, Patients, and the Communities it Serves ......................... 5

     E.      California and the Federal Government Announced Vaccine Mandates After Kaiser Permanente Announced its Policy ............................................................... 5

     F.      Plaintiffs' Unsupported Allegations ........................................................ 6

II.     LEGAL STANDARD ........................................................................................... 7

III.    ARGUMENT ........................................................................................................ 7

     A.      Plaintiffs Are Not Likely to Succeed on the Merits ................................ 7

           1.      Plaintiffs Failed to Join Necessary Parties ................................. 8

           2.      Kaiser Permanente is Not a State Actor ...................................... 8

           3.      Any Kaiser Permanente Lobbying is Protected by *Noerr-Pennington* ... 10

           4.      Assuming Kaiser Permanente is a State Actor, Rational Basis Review Applies ............................................................................. 10

           5.      Kaiser Permanente's Vaccine Policy Has a Rational Basis .................. 12

           6.      Plaintiffs California Constitutional Claim Is Also Unlikely to Succeed 13

     B.      Plaintiffs Have Failed to Show Irreparable Harm ................................. 14

     C.      The Balance of the Equities Tips Sharply in Kaiser Permanente's Favor and the Public Interest Weighs Heavily Against an Injunction ...................................... 14

IV.     CONCLUSION .................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Am.'s Frontline Drs. v. Wilcox*,
    2021 WL 4546923 (C.D. Cal. July 30, 2021) ..................................................... 1, 14, 15

*Andre-Rodney v. Hochul*,
    2021 WL 5050067 (N.D.N.Y. Nov. 1, 2021) ..................................................... 3, 11, 12

*Beckerich v. St. Elizabeth Medical Center*,
    2021 WL 4398027 (2021) .................................................................................... 1

*Belgau v. Inslee*,
    975 F.3d 940 (9th Cir. 2020) ............................................................................. 9

*Brach v. Newsom*,
    2020 WL 6036764 (C.D. Cal. Aug. 21, 2020) ................................................... 12

*Bridges v. Houston Methodist Hosp.*,
    2021 WL 2399994 (S.D. Tex. June 12, 2021) .................................................... 9

*Cruzan by Cruzan v. Dir., Missouri Dep't of Health*,
    497 U.S. 261 (1990) ........................................................................................... 3

*Great N. Res., Inc. v. Coba*,
    2020 WL 6820793 (D. Or. Nov. 20, 2020) ........................................................ 14

*Guilfoyle v. Beutner*,
    2021 WL 4594780 (C.D. Cal. Sept. 14, 2021) ...................................................... 12, 14

*Harris v. Univ. of Mass., Lowell*,
    2021 WL 3848012 (D. Mass. Aug. 27, 2021) .................................................... 1

*Harsman v. Cincinnati Children's Hospital Medical Center*,
    2021 WL 4504245 (S.D. Ohio Sept. 30, 2021) .................................................. 1

*Heller v. Doe by Doe*,
    509 U.S. 312 (1993) ........................................................................................... 12

*Johnson v. Brown*,
    2021 WL 4846060 (D. Or. Oct. 18, 2021) .......................................................... passim

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Kheriaty v. Regents of Univ. of California,*
    2021 WL 4714664 (C.D. Cal. Sept. 29, 2021) ........................................................ 1, 15

*Klaassen v. Trustees of Indiana Univ.,*
    2021 WL 3073926 (N.D. Ind. July 18, 2021) ...................................................... 11, 15

*Klaassen v. Trustees of Indiana Univ.,*
    7 F.4th 592 (7th Cir. 2021) ...................................................................................... 1, 12

*Love v. State Dep't of Educ.,*
    29 Cal. App. 5th 980 (2018) ......................................................................................... 13

*Naoko Ohno v. Yuko Yasuma,*
    723 F.3d 984 (9th Cir. 2013) ......................................................................................... 9

*Norris v. Stanley,*
    2021 WL 4738827 (W.D. Mich. Oct. 8, 2021) ......................................................... 1, 11

*Olson v. Bonta,*
    2021 WL 3474015 (C.D. Cal. July 16, 2021) .............................................................. 13

*Pasadena Republican Club v. W. Just. Ctr.,*
    985 F.3d 1161 (9th Cir. 2021) ....................................................................................... 9

*Sunset Homeowners Ass'n, Inc. v. DiFrancesco,*
    386 F. Supp. 3d 299 (W.D.N.Y. 2019) ......................................................................... 8

*Sutton v. Providence St. Joseph Med. Ctr.,*
    192 F.3d 826 (9th Cir. 1999) ......................................................................................... 8

*Valdez v. Grisham,*
    2021 WL 4145746 (D.N.M. Sept. 13, 2021) ........................................................ 1, 2, 12

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ....................................................................................................... 11

*Williams,*
    2021 WL 4894264 .................................................................................................. 4, 6, 12

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................................................ 7

## <u>TABLE OF AUTHORITIES (cont.)</u>

<u>**Page(s)**</u>

**<u>Rules</u>**

Fed. R. Civ. P. 19 ...................................................................................................................... 2, 8

**<u>Regulations</u>**

Medicare and Medicaid Programs; Omnibus COVID–19 Health Care Staff
    Vaccination,
    86 Fed. Reg. 61562 (November 5, 2021) ........................................................................ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Despite Plaintiffs' 23 declarations, this case is easily resolved as a matter of law. To protect its employees, patients, members, and the communities it serves, Kaiser Permanente[1] has required its employees to get vaccinated against COVID-19 or obtain a qualifying medical or religious exemption. Countless other health care providers have done the same,[2] and courts across the country have repeatedly upheld such requirements from private employers and governments alike based on more than 100 years of Supreme Court precedent. *See, e.g.*, *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("There can't be a constitutional problem with vaccination against SARS-CoV-2.").[3] If Plaintiffs do not want to get vaccinated, they can stop working at Kaiser Permanente. What Plaintiffs cannot do is force Kaiser Permanente to continue employing unvaccinated workers who have not received a qualifying exemption, as they endanger the health of others.

Though their Complaint contains a scattershot of rejected legal theories, Plaintiffs seek an injunction only on their constitutional claims and based on two false premises: that (1) Kaiser Permanente—which consists solely of private entities—is somehow a state actor; and (2) the COVID-19 vaccines are not actually vaccines, but instead "treatments." (Dkt. 27-1 at 1–2.) Relying on these fictions, Plaintiffs claim this case is "different." (*Id.* at 1.) But the only thing exceptional about this case is Plaintiffs' reliance on misinformation and internet conspiracies[4]

---

[1] Kaiser Permanente here refers to Kaiser Foundation Hospitals, Kaiser Foundation Health Plan, Inc., and The Permanente Medical Group, Inc. ("KFH," "KFHP," and "TPMG," respectively).

[2] *See* Declaration of Stephen Parodi, M.D. ("Parodi Decl ") ¶ 52.

[3] *See also Harsman v. Cincinnati Children's Hospital Medical Center,* 2021 WL 4504245 (S.D. Ohio Sept. 30, 2021); *Beckerich v. St. Elizabeth Medical Center,* 2021 WL 4398027 (2021); *Norris v. Stanley,* 2021 WL 4738827 (W.D. Mich. Oct. 8, 2021); *Valdez v. Grisham*, 2021 WL 4145746 (D.N.M. Sept. 13, 2021); *Harris v. Univ. of Mass., Lowell,* 2021 WL 3848012 (D. Mass. Aug. 27, 2021); *Kheriaty v. Regents of Univ. of California,* 2021 WL 4714664 (C.D. Cal. Sept. 29, 2021); *Am.'s Frontline Drs. v. Wilcox,* 2021 WL 4546923 (C.D. Cal. July 30, 2021); *Johnson v. Brown,* 2021 WL 4846060 (D. Or. Oct. 18, 2021); *Together Employees et al v. Mass General Brigham Inc.*, Case No. 1:21-CV-11686 (D. Mass. Nov. 4, 2021), Dkt. 36.

[4] The CDC has thoroughly discredited Plaintiffs' claim that the vaccines are not vaccines. *See* Request for Judicial Notice filed concurrently herewith ("RJN") ¶ 1

instead of cognizable legal theories. Plaintiffs fail to meet their burden at every step.

     *First*, Plaintiffs cannot show a likelihood of success. For starters, Plaintiffs have failed to join necessary parties—California and federal actors—as required by Fed. R. Civ. P. 19.

     On the merits, Kaiser Permanente is not a state actor under Section 1983, and thus Plaintiffs' federal constitutional claims fail as a matter of law. Plaintiffs have offered no *evidence* in support of their incredible claim that Kaiser Permanente is a state actor, but instead rely entirely on the conclusory allegations in their Complaint, which misrepresent Kaiser Permanente's efforts to fight the COVID-19 pandemic—including its advisory work on vaccine safety and an initiative to promote vaccine access in California. (Dkt. 29 at 5–6.) Plaintiffs' allegations are inadequate to state a claim, much less meet their heavy burden to obtain an injunction.

     Even if Kaiser Permanente were a state actor, its vaccine policy is constitutional. Plaintiffs concede that courts apply rational basis review to vaccine requirements,[5] but allege that COVID-19 vaccines only treat an individual's symptoms and do not prevent infection or spread of COVID-19, and thus strict scrutiny applies. The evidentiary premise for Plaintiffs' argument is wholly lacking. Medical studies and clinical data show that COVID-19 vaccines do reduce the spread of COVID-19: they make individuals less likely to be infected with the virus, less likely to spread it if infected, and shorten the length of any such infections. (Parodi Decl. ¶¶ 22–24.) Regardless, as Plaintiffs admit, the COVID-19 vaccines benefit the public by reducing serious illness, thereby decreasing hospital admissions, and avoiding surges and strains on hospitals. (*See* Declaration of Thomas S. Hanenburg ("Hanenburg Decl.") ¶¶ 4, 8; Parodi Decl. ¶ 25.) Even if those were the only benefits provided by COVID-19 vaccines (they are not), they are sufficient to uphold Kaiser Permanente's policy against constitutional challenge.

     But this Court need not even consider Plaintiffs' declarations or factual assertions to deny their motion. Even accepting Plaintiffs' premise, their argument fails as a matter of law for a simple

---

(https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html; *see also* RJN ¶ 2 (https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/index.html).

[5] *See, e.g., Valdez*, 2021 WL 4145746, at *5 ("[F]ederal courts have consistently held that vaccine mandates do not implicate a fundamental right and that rational basis review therefore applies.") (collecting cases).

reason: unlike the compelled medical treatment cases on which they rely, Plaintiffs maintain the right to refuse the COVID-19 vaccines. *C.f. Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) ("We assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition.") Nothing compels Plaintiffs to work for Kaiser Permanente and if they object to vaccination, they can work elsewhere. *Andre-Rodney v. Hochul*, 2021 WL 5050067, at *6 (N.D.N.Y. Nov. 1, 2021) (holding employer vaccine mandate did not infringe right to refuse care because employees could work elsewhere). With no fundamental right at issue, the Court must apply rational basis review, which Kaiser Permanente's policy easily passes because protecting its employees, patients, and members from COVID-19 is a legitimate interest, to which its vaccine policy is rationally related.

*Second*, Plaintiffs have failed to meet their burden to clearly show irreparable harm, relying entirely on their likelihood to succeed in proving constitutional violations, which is non-existent.

*Third*, the balance of equities and public interest weigh heavily in Kaiser Permanente's favor. Kaiser Permanente seeks to protect its employees, patients, members, and communities from COVID-19. This far outweighs any harm Plaintiffs may face in choosing between vaccination and termination. An injunction is also clearly against the public interest: increased vaccination rates benefit everyone and preventing Kaiser Permanente from enforcing its vaccine requirement will lead to unnecessary illnesses, hospitalizations, and deaths.

For the foregoing and below reasons, the Court should deny Plaintiffs' motion.

## II.    <u>BACKGROUND</u>

### A.    **COVID-19 Continues to Threaten Public Health.**

As of November 10, 2021, more than 46 million Americans have contracted COVID-19, and 755,201 have died. (Parodi Decl. ¶ 10.) Kaiser Permanente—the nation's largest integrated, nonprofit health care system—has witnessed first-hand the destruction that COVID-19 has wrought. To date, more than 1.1 million Kaiser Permanente patients have contracted COVID-19. (Hanenburg Decl. ¶ 5.)

The Delta variant is currently the dominant strain of SARS-CoV-2 in the United States, and it is more than twice as contagious, and is more likely to cause serious illness, hospitalization, and death, as compared to prior variants. (Parodi Decl. ¶ 12.) Because SARS-CoV-2 has the capability to mutate frequently, the emergence of new variants that are even more transmissible or virulent remains a risk. (*Id.* ¶ 14.)

### B.    Vaccines Prevent COVID-19 Infections and Transmissions.

Each of the available COVID-19 vaccines have proven effective at preventing infection, transmission, serious illness, hospitalization, and death. (Parodi Decl. ¶ 20–25.) CDC data confirms that unvaccinated individuals are at more than 6 times greater risk of testing positive for COVID-19 than vaccinated individuals, and statistics from KFH show that vaccinated individuals have a less than 1% chance of being infected. (*Id.* ¶ 22.) Vaccines reduce the spread of COVID-19, not only by reducing the risk of infection with COVID-19, but also by shortening the time that an infected person is contagious and capable of spreading the disease to others. (*Id.* ¶¶ 23–24.) Early studies relied on by the CDC indicate this to be true with respect to the Delta variant (*id.* ¶ 24) and the CDC advises that vaccines are "highly effective, including against the Delta variant," and play "a crucial role in limiting spread of the virus."[6] The vaccines have proven effective against each variant of SARS-CoV-2 that has emerged in the United States, reinforcing the importance of vaccination. (Parodi Decl. ¶ 14.)[7]

Moreover, because the vaccines significantly reduce the possibility of serious illness and hospitalization for COVID-19, vaccination reduces the public health threat presented by surges in COVID-19 cases and hospitalizations. (Hanenburg Decl. ¶¶ 4, 8.) Such threats for hospitals (including but not limited to Kaiser Permanente's) include significant strains on resources (i.e., having sufficient personal protective equipment and ventilators); staffing issues (i.e., having enough healthy, vaccinated workers to respond to surges); and infrastructure challenges (i.e., sufficient hospital beds and space). (*Id.*)

---

[6]  RJN ¶ 3 (https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html)

[7] *See, e.g., Williams*, 2021 WL 4894264 at *2 ("The vaccines have demonstrated continued effectiveness in protecting against the Delta variant of COVID-19.")

**C.      The COVID-19 Vaccines are Safe.**

The three available vaccines—the Pfizer vaccine, which has received full FDA approval, and Moderna and Johnson & Johnson vaccines, which are approved through EUAs—have been subject to the "most intense safety monitoring in U.S. history."[8] Over 7 billion doses have been administered worldwide and only a tiny fraction of those doses caused adverse reactions. The data is clear: the benefits of COVID-19 vaccination far outweigh any known risks. (Parodi Decl. ¶¶ 32–36.)

**D.      Kaiser Permanente Implemented its Vaccine Policy to Protect the Health of Employees, Members, Patients, and the Communities it Serves.**

Due to the nature of their jobs, health care workers are at a heightened risk of COVID-19 infection and transmission. (Parodi Decl. ¶¶ 15–19.) Thus, on August 2, 2021, Kaiser Permanente announced a COVID-19 vaccination policy that requires all of its employees to be vaccinated or receive a qualifying medical or religious exemption. (*See* Declaration of Arlene Peasnall ("Peasnall Decl.") ¶¶ 5.) Kaiser Permanente implemented its policy in consultation with infectious diseases experts and based on scientific evidence. (*Id.* ¶¶ 10–12.). Overall, Kaiser Permanente employees support the policy: the vast majority were already vaccinated before the policy was announced, and as of November 7, 2021, 97% of all physicians and 92% of non-physician employees are vaccinated. (*Id.* at ¶ 14.) The small percentage of employees who do not comply will be terminated. (*Id.* ¶¶ 15, 18; Compl. at 12.)

**E.      California and the Federal Government Announced Vaccine Mandates After Kaiser Permanente Announced its Policy.**

Consistent with its role as one of the country's largest care providers, Kaiser Permanente routinely consults with public officials to address urgent public health matters. As detailed in Kaiser Permanente's pending motion to dismiss, this includes, with respect to COVID-19, research into the safety of vaccine candidates, vaccine distribution, and expanding vaccine access for vulnerable and underserved communities. (Dkt. 29 at 11.) At no point, however, has Kaiser

---

[8] RJN ¶ 4 (https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html.)

Permanente controlled the government or caused it to issue a vaccine mandate. California announced its vaccination mandate for health care workers on August 5, 2021, three days *after* Kaiser Permanente announced its policy. (Compl. at 1, 13.) Similarly, it was over a month later that President Biden announced vaccination requirements aimed at health care facilities— measures which were not issued as regulation until November 4, 2021. (Parodi Decl. ¶ 54.)

### F.      Plaintiffs' Unsupported Allegations

Plaintiffs rely on baseless and misleading allegations.[9] In support of their argument that COVID-19 vaccines are mere treatments, Plaintiffs cherry-pick and misquote documents so that they appear to say that vaccines were designed only to mitigate COVID-19 symptoms, when these documents actually show that the vaccines were designed to prevent COVID-19 infection. (*Id.* ¶¶ 26–30.) Plaintiffs also argue that natural immunity obviates the need for vaccination, but the evidence shows that vaccines offer better protection than natural immunity alone. (*Id.* ¶¶ 37–40.) Plaintiffs further assert that data from the Vaccine Adverse Event Reporting System (VAERS) demonstrates that COVID-19 vaccines have caused a "101-fold increase" in annual vaccine deaths. (Dkt. 27-1 at 10.) This claim has no basis in fact. Reports to VAERS do not indicate that a vaccine caused a reported event—they are mere signals that must be tested before showing causality. (Parodi Decl. ¶ 33.) Moreover, studies that *have* tested causality show that vaccine recipients had *lower* non-COVID-19 related deaths than people who were not vaccinated. (*Id.* ¶ 34.) Plaintiffs also tout a litany of alternative treatments for COVID-19, including hydroxychloroquine and ivermectin. (Dkt. 27-9 ¶ 8; Dkt. 27-11 ¶ 5.) None of these alternative treatments are recommended by the CDC, FDA, or WHO either for treatment or prevention of COVID-19 and would likely do more harm than good. (Parodi Decl. ¶¶ 57–63.) And none are substitutes for vaccination, which offers the best protection against COVID-19. (*Id.*)

Similarly, Plaintiffs offer no concrete allegation, much less evidence, for the proposition that Kaiser Permanente has forced government officials to issue vaccine mandates. Plaintiffs' sole

---

[9] Many of these allegations pervade the declarations submitted in support of Plaintiffs' Motion. Kaiser Permanente has made evidentiary objections to those declarations, which are filed concurrently herewith.

declaration on this point comes from an ethics professor who repeats the same speculative and unfounded allegations from Plaintiffs' Complaint regarding Kaiser Permanente's work with the Advisory Committee on Immunization Practices (ACIP) and the Vaccine Safety Datalink (VSD). (Dkt. 27-14. ¶ II.8.) But both ACIP and VSD conducted research regarding vaccine efficacy and safety and were not involved in governmental mandates. (Dkt. 29 at 13; Parodi Decl. ¶¶ 66–67.) The remaining allegations are unsupported by any declaration and fail on their face. Dr. Bechara Choucair has not been employed by Kaiser Permanente since January 2021 (Parodi Decl. ¶ 65), long before any discussion of vaccine requirements or government mandates. The MOU between Kaiser Permanente and California related to increasing access to vaccines and was entirely unrelated to vaccine mandates. (Hanenburg Decl. ¶¶ 9–12.)[10]

Tellingly absent from Plaintiffs' barrage of declarations is any testimony identifying irreparable harm they will suffer in absence of injunctive relief, or indeed *any* statements from *any* Plaintiffs. Instead, Plaintiffs rely on ten declarants who have no relation to Kaiser Permanente. One such declarant claims to have been a certified nurse assistant in a COVID unit who, while unvaccinated, "held [her patients'] hands, hugged them, [and] kissed them." (Dkt. 27-24 ¶ 19.) This claim highlights that close contact is part and parcel of health care, and only further reflects the need for vaccine requirements.

## II.  LEGAL STANDARD

"[I]njunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). It is Plaintiffs' burden to show that: (1) they are likely to succeed on the merits; (2) they will suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20.

---

[10]  If anything, the MOU confirms the arms-length dealings between Kaiser Permanente and the State of California. It provided a "No Cost Obligation" for the State of California, which declined to compensate Kaiser Permanente for establishing mass vaccination sites pursuant to the MOU. (Hanenburg Decl. ¶ 11.)

III.   **ARGUMENT**

A.     **Plaintiffs Are Not Likely to Succeed on the Merits.**

Plaintiffs cannot prevail on their claims because of procedural, legal, and factual deficiencies. Any of these reasons is an independently sufficient basis to reject Plaintiffs' claims.

1.     *Plaintiffs Failed to Join Necessary Parties.*

First, Plaintiffs failed to join state and federal governments, who are required parties under Rule 19. Plaintiffs admit in their motion that their objective is to enjoin not only Kaiser Permanente, but also the State of California and the federal government, from enforcing vaccine mandates. (Dkt. 27-1 at 8.) Both of those mandates require employers like Kaiser Permanente to maintain vaccination policies.[11] That being the case, Kaiser Permanente would be subject to a substantial risk of incurring inconsistent obligations if an injunction is granted in Plaintiffs' favor, FED. R. CIV. P. 19(a)(1)(B)(ii), and Plaintiffs' motion for preliminary injunction must be denied for nonjoinder. *See, e.g.*, *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, 386 F. Supp. 3d 299, 307 (W.D.N.Y. 2019) (The "nonjoinder of a necessary party is grounds to deny a preliminary injunction for failure to demonstrate a likelihood of success on the merits.").

2.     *Kaiser Permanente is Not a State Actor.*

As explained in Kaiser Permanente's motion to dismiss, Plaintiffs cannot meet their heavy burden to show that Kaiser Permanente—which consists of private entities—is a state actor. (Dkt. 29 at 6); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (explaining private conduct is presumed not to be government action, which can be overcome only in "rare circumstances"). Plaintiffs' motion marshals *no* evidence in support of this claim. Their only declaration that even touches on their state actor allegations—a speculative, unreliable declaration

---

[11] *See Medicare and Medicaid Programs; Omnibus COVID–19 Health Care Staff Vaccination,* 86 Fed. Reg. 61562 (November 5, 2021) (stating with respect to the federal mandate that the "interim final rule requires certain providers [like Kaiser Permanente] to ensure staff are fully vaccinated for COVID-19, unless exempt"); RJN ¶ 5 (https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Order-of-the-State-Public-Health-Officer-Health-Care-Worker-Vaccine-Requirement.aspx) (ordering with respect to the California that "facilities must be in full compliance with the Order by September 30, 2021").

from an ethics professor (Dkt. 27-14)—merely regurgitates conspiracies from the Complaint.

To avoid duplication and for the ease of the Court, Kaiser Permanente incorporates by reference the arguments made in its motion to dismiss. (Dkt. 29 at 6–9). To summarize, Plaintiffs cannot show that Kaiser Permanente acted under color of state law, as its policy was promulgated *before* any mandates took effect, and any interactions with federal entities are irrelevant because Section 1983 liability must be premised on *state* action. Further, just like their Complaint, Plaintiffs' motion argues only that vaccine mandates are *traditionally* a public function. (Dkt. 27-1 at 11–12.) They cannot show it is a traditional *and exclusively* public function, as required, because employers routinely require vaccines as a condition of employment. Nor can Plaintiffs show joint action: they have identified nothing indicating Kaiser Permanente had any role in California's imposition of a vaccine mandate for health care workers, much less shown the existence of a conspiracy between Kaiser Permanente and California. (Dkt. 29 at 8–9.)[12]

Plaintiffs' alternative argument—that Kaiser Permanente's status as a state actor depends on their ability to find work elsewhere (Dkt. 27-1 at 12)—has no support in law. *Belgau v. Inslee*, 975 F.3d 940, 952 (9th Cir. 2020) is entirely inapposite. The portion of *Belgau* cited by Plaintiffs does not relate to the state actor inquiry, but rather discusses whether a union had compelled speech under the First Amendment when it spent plaintiffs' unions dues. *See id.* Plaintiffs' other case, *Bridges v. Houston Methodist Hosp.*, 2021 WL 2399994 (S.D. Tex. June 12, 2021) does not involve a Section 1983 claim and has no state actor allegations. Even if the ability to find alternative work were relevant to the state actor inquiry, Plaintiffs could easily leave Kaiser Permanente, and have no constitutional right to work in healthcare, or any other private profession.

At bottom, Plaintiffs' allegations are premised on the idea that a private entity and a state working together to promote the same salutary objective (in this case, public health), transforms the private entity into a state actor. This is incorrect: the "mere generic promotion of a public purpose" is not enough to make Kaiser Permanente a state actor. *Pasadena Republican Club v. W.*

---

[12] Plaintiffs' "governmental nexus" theory fails for the same reasons. *See Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 n.13 (9th Cir. 2013).

*Just. Ctr.*, 985 F.3d 1161, 1170–71 (9th Cir. 2021) ("Adopting this theory would cast almost any nonprofit with a civic mission and some contractual relationship with the government as a state actor."). Plaintiffs' state actor theories lack evidentiary support and, as illustrated, fail as a matter of law, leaving Plaintiffs no likelihood of success on the merits on their Section 1983 claims.

       3.     *Any Kaiser Permanente Lobbying is Protected by* Noerr-Pennington.

Plaintiffs' Section 1983 claims fail for the additional reason that the *Noerr-Pennington* doctrine precludes liability for constitutionally protected petitioning conduct. As explained in Kaiser Permanente's motion to dismiss, Plaintiffs have not only failed to allege any facts showing that Kaiser Permanente actually lobbied any governments to issue vaccine mandates, but also cannot legally state a Section 1983 claim based on lobbying efforts. (*See* Dkt. 29 at 9.)

       4.     *Assuming Kaiser Permanente is a State Actor, Rational Basis Review Applies.*

In a futile attempt to evade rational basis review, Plaintiffs concoct a false dichotomy between vaccines and treatments, attempting to distinguish well-established caselaw holding that vaccines do not implicate the fundamental right to refuse medical treatment, in part, because vaccines protect public health and do not treat only the individual. Based solely on their claim that the vaccines "do not prevent individuals from either getting or transmitting COVID," Plaintiffs argue that the litany of cases upholding vaccine requirements under rational basis review are inapplicable, and that the Court should apply strict scrutiny to their "constitutional claims."[13] (Dkt. 27-1 at 8, 11.) Plaintiffs' argument fails for at least three independent reasons:

*First*, the foundation of Plaintiffs' argument is erroneous: COVID-19 vaccines do prevent infection and transmission. Vaccinated individuals are between 5 and 6 times less likely to contract COVID-19 than unvaccinated individuals. (Parodi Decl. ¶ 22.) And, if a breakthrough infection occurs, the vaccinated are infectious for less time than the unvaccinated. (*Id.* ¶ 24.) If an individual is less likely to be infected in the first place and, in any event, will be infectious for a shorter period

---

[13] It is not clear on which constitutional claims Plaintiffs are moving; their only argument for heightened review is that refusing the vaccines is a fundamental right.

of time, they are less likely to spread the virus to others. Even still, the available evidence suggests that vaccinated individuals are less likely to transmit the virus to others even while infectious. (*Id.* ¶ 23–24.) Thus, the COVID-19 vaccines "address a collective enemy, not just an individual one," and *Cruzan* and *Glucksberg*—which "were limited to an individual's choice related to the refusal of living subsistence or medical treatment . . . with *no ramifications to the physical health of others*"—do not apply. *See Klaassen v. Trustees of Indiana Univ.*, 2021 WL 3073926, at *24 (N.D. Ind. July 18, 2021) (emphasis added).

*Second*, even assuming that COVID-19 vaccines do not prevent transmission, they still improve public health by preventing hospitalizations and deaths. Plaintiffs admit that the vaccines lessen the chance of serious illness. (Dkt. 27-1 at 1.) And studies have shown the vaccinated are more than ten times less likely to be hospitalized or die from COVID-19 than the unvaccinated. (Parodi Decl. ¶ 25.) This is important because one of the primary public health concerns during a pandemic is the availability of health resources and strains on healthcare infrastructure due to surges in hospitalizations. (Hanenburg Decl. ¶¶ 4, 8.) By requiring its workforce to be vaccinated, Kaiser Permanente's policy preserves critical resources by reducing unnecessary hospitalizations and ensuring that its employees are able to help treat patients and do not contract COVID-19 themselves. This is yet another reason why the COVID-19 vaccines impact public health and *Cruzan* and *Glucksberg* are inapposite. *See Klaassen*, 2021 WL 3073926, at *24.

*Third*, even setting aside the above flaws in Plaintiffs' theory, rational basis review would still apply. To merit more, Plaintiffs must show that there is a fundamental right at stake. *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). While there is a fundamental right to refuse medical treatment in certain circumstances, Kaiser Permanente's policy does not infringe upon this right because "it does not force Plaintiffs to consent to vaccination." *Andre-Rodney*, 2021 WL 5050067 at *6; *see also Norris v. Stanley*, 2021 WL 4738827, at *2 (W.D. Mich. Oct. 8, 2021) ("The MSU vaccine policy does not force Plaintiff to forgo her rights to privacy and bodily autonomy, but if she chooses not to be vaccinated, she does not have the right to work at MSU at the same time."); *Johnson*, 2021 WL 4846060, at *18 ("Plaintiffs may either get the vaccine, apply for an exception, or look for employment elsewhere.") If Plaintiffs refuse to be vaccinated or do

not obtain a qualifying exemption, they can choose to work elsewhere—they are not compelled to work for Kaiser Permanente, nor do they have a fundamental right to work in the healthcare industry. *See Andre-Rodney*, 2021 WL 5050067, at *6. In short, Plaintiffs' right to work at Kaiser Permanente "while unvaccinated and during a pandemic" is in no way "deeply rooted in this Nation's history and tradition." *Valdez*, 2021 WL 4145746, at *5; *see also Williams*, 2021 WL 4894264 at *8 ("[T]here is no fundamental right to refuse vaccination."); *Johnson*, 2021 WL 4846060, at *13 (same).

Accordingly, consistent with the overwhelming weight of authority, the Court should apply rational basis review. *See Johnson*, 2021 WL 4846060, at *12 (collecting cases applying rational basis review to COVID-19 vaccination challenges); *Klaasen*, 7 F.4th at 593 (courts must apply rational basis review to vaccine requirements as held by the Supreme Court in *Jacobson*).

5.    *Kaiser Permanente's Vaccine Policy Has a Rational Basis.*

As explained in Kaiser Permanente's motion to dismiss, its vaccination policy easily passes rational basis review. (Dkt. 29 at 10–11.) Plaintiffs cannot come close to meeting their burden to negate "every conceivable basis which might support" Kaiser Permanente's vaccine policy. *See Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). Kaiser Permanente has a "legitimate and compelling interest in abating the COVID-19 pandemic," *Guilfoyle v. Beutner*, 2021 WL 4594780, at *14 (C.D. Cal. Sept. 14, 2021), and its vaccination policy is rationally related to protecting its employees, members, patients, and communities from COVID-19. As discussed above, all available evidence shows the COVID-19 vaccines are safe and highly effective at reducing infections, transmissions, serious illnesses, hospitalizations, and deaths. (Parodi Decl. ¶¶ 20–36.)

Rational basis review permits the Court to ignore Plaintiffs' declarations and dubious "evidence." *See Brach v. Newsom*, 2020 WL 6036764, at *7 (C.D. Cal. Aug. 21, 2020) ("The scientific opinions of Plaintiffs' experts have little bearing on the question before this Court" because rational basis review does "not require that government [actions] be supported by scientific consensus – or even the most reliable scientific evidence."). Plaintiffs' argument that Kaiser Permanente's vaccination policy is insufficiently tailored because it applies to remote

employees and employees who have previously been infected with COVID-19 fails. Rational basis review requires only a rational relation to a legitimate interest. *See Guilfoyle*, 2021 WL 4594780, at *15; *see also Olson v. Bonta*, 2021 WL 3474015, at *2 (C.D. Cal. July 16, 2021) (noting "classifications that are 'to some extent both underinclusive and overinclusive' may survive rational-basis review, since 'perfection is by no means required.'"). Vaccination offers more certain protection against COVID-19 than does natural immunity alone, (Parodi Decl. ¶ 40), and requiring vaccines for remote employees is prudent because they are subject to being called into an in-person setting where they may interact with and infect patients and colleagues, (Peasnall Decl. ¶ 9). Thus, Kaiser Permanente's decision to opt for a generally applicable mandate—while allowing for medical and religious exemptions—is more than rationally related to combating COVID-19.

Accordingly, for these reasons—as well as those outlined in Kaiser Permanente's motion to dismiss (Dkt. 29 at 10–12)—Kaiser Permanente's vaccine policy survives rational basis review.

6. *Plaintiffs California Constitutional Claim Is Also Unlikely to Succeed.*

Plaintiffs also challenge Kaiser Permanente's vaccine requirement based on the California Constitution's right to privacy. (Dkt. 27-1 at 15–16.) As explained in Kaiser Permanente's motion to dismiss, this too fails. (Dkt. 29 at 14.) First, the Court should decline to exercise supplemental jurisdiction over this claim. (*Id.* at 13.) But even if the Court addresses its merits, California courts acknowledge that "[c]ompulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases." *Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980, 993 (2018) (affirming dismissal of right to privacy challenge to state law repealing "personal belief" exemption to school immunization requirements). Here, Plaintiffs may quit their jobs and are not even subject to compulsory vaccination. Further, Kaiser Permanente has "demonstrated a legitimate and important interest in implementing COVID-19 mitigation measures, which justifies any invasion of Plaintiffs' privacy." *Guilfoyle*, 2021 WL 4594780, at *21.

Accordingly, Plaintiffs cannot show even a remote possibility of success on the merits of their claims, and the Court should deny their motion on this basis alone. *See, e.g.*, *id.* at *21–22

("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements.") (citation omitted).

> **B.    Plaintiffs Have Failed to Show Irreparable Harm.**

Plaintiffs devote all of one paragraph to this prong. (Dkt. 27-1 at 19.) Despite submitting 23 declarations in support of their motion, Plaintiffs submit *none* from themselves or any purported member of the "United KP Freedom Alliance" identifying any harm they would suffer in the absence of injunctive relief. Instead, they rely entirely on there being a presumption of irreparable harm because they are likely to succeed on their constitutional claims. (*Id.*) As discussed, Plaintiffs have no chance of succeeding on the merits of their claims, and thus there can be no presumption of irreparable harm. *Am.'s Frontline Drs.*, 2021 WL 4546923, at *7 ("Plaintiffs' constitutional claims are unlikely to succeed. Plaintiffs' claims that the Policy violates their constitutional rights are thus insufficient to establish irreparable harm.").[14]

To the extent Plaintiffs argue on reply that losing their jobs at Kaiser Permanente constitutes irreparable harm, courts have firmly rejected this argument, as loss of employment is "routine" and "compensable by money damages." *See Johnson*, 2021 WL 4846060, at *25 (D. Or. Oct. 18, 2021) (collecting cases). Moreover, Plaintiffs admit that there is a benefit to vaccination. (Dkt. 27-1 at 1 (admitting the vaccines "might lessen recipients [*sic*] chances of developing serious symptoms of COVID").)

Accordingly, Plaintiffs have entirely failed to meet their burden to show irreparable harm.

> **C.    The Balance of the Equities Tips Sharply in Kaiser Permanente's Favor and the Public Interest Weighs Heavily Against an Injunction.**

Plaintiffs admit that the vaccines provide "health benefits," and, as discussed, they have submitted no evidence showing any particularized, imminent harms they will suffer absent an injunction. (Dkt. 27-1 at 19.) In support of their argument that the balance of the equities favors an injunction, they argue they should be "able to make the decision as to whether to take the

---

[14] Courts in this Circuit have called into question "per se irreparable injury for constitutional claims and required something more." *See Great N. Res., Inc. v. Coba*, 2020 WL 6820793, at *3 (D. Or. Nov. 20, 2020) (collecting cases).

vaccine for themselves as they are the only ones directly impacted by the decision." (*Id.*)

As explained throughout, Plaintiffs are wrong—vaccines stop the spread of COVID-19 among Kaiser Permanente's workforce, vulnerable patients, and members, (Parodi Decl. ¶¶ 22–24), and also decrease the risk that hospitals (including Kaiser Permanente's) will face staffing and resource issues if the virus surges once again. (Hanenburg Decl. ¶¶ 4, 8.) Moreover, *Plaintiffs have a choice*: (1) work at Kaiser Permanente and get vaccinated or qualify for an exemption or (2) work elsewhere and do not get vaccinated. Their interest in continuing to work at Kaiser Permanente while unvaccinated without a qualifying exemption is dwarfed by the harms Kaiser Permanente will incur if enjoined from requiring vaccinations as a condition of employment, including increased risk of COVID-19 infection, hospitalization, and death for its workforce and patients. When presented with similar requests to enjoin vaccination requirements, courts have found the balance of equities to tip sharply against the objectors, such as Plaintiffs. *See, e.g.*, *Kheriaty*, 2021 WL 4714664, at *9 ("The Regents are attempting to protect a campus community of more than half a million students, faculty, and staff from a deadly infectious disease. This far outweighs any harm [Plaintiff] may face in choosing between receiving a medically-approved vaccination or suffering undetermined employment-related consequences."); *Johnson*, 2021 WL 4846060, at *25–26 ("Plaintiffs are not likely to succeed in showing that their individual interests in remaining unvaccinated outweigh the State's interest in public health and welfare.").

Finally, there can be no doubt that an injunction would be against the public interest. Kaiser Permanente's vaccine policy not only improves the health of its employees, patients, and members, "but also provides indirect protection to other members of the public at large." *Kheriaty*, 2021 WL 4714664, at *9. An overwhelming consensus of courts have found that enjoining COVID-19 vaccine requirements is against the public interest. *See, e.g.*, *id.*; *Am.'s Frontline Drs.*, 2021 WL 4546923, at *8; *Johnson*, 2021 WL 4846060, at *25; *Klaassen*, 2021 WL 3073926, at *43–44.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: November 12, 2021                    Respectfully submitted,

                                            HUESTON HENNIGAN LLP

                                            By:  _____
                                                 John C. Hueston
                                                 Marshall A. Camp
                                                 Joseph A. Reiter
                                                 Haoxiaohan Cai
                                                 Joseph Crusham

                                                 *Attorneys for Defendants Kaiser
                                                 Foundation Hospitals, Kaiser
                                                 Foundation Health Plan, Inc., and The
                                                 Permanente Medical Group, Inc.*